THE RICHMOND. THE BOSWELL. THE IOWA. THE JAMES W. ELWELL. THE POWELL.

(Circuit Court of Appeals, Second Circuit. June 11, 1907.)

Nos. 12, 13, 14.

1. COLLISION—MEETING TOWS AND OVERTAKING SCHOONER—FAULT OF TUG.

A double collision at sea, one between a schooner and a barge in tow, and a resulting collision between two other tows, *held* due solely to the fault of one of the tugs, which, on meeting another tug with two tows, which were being overtaken by a schooner, passed to the port of such tug and tows, although her own tows were sagging in that direction on account of the wind and failed to make sufficient allowance for such sagging, the result being that the schooner was pocketed and compelled in extremis to change her course.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Collision, § 78. Overtaking vessels, see note to The Rebecca, 60 C. C. A. 254.]

Appeal from the District Court of the United States for the Southern District of New York.

For opinion below, see 143 Fed. 996.

Butler, Notman & Mynderse and T. M. Brown, for The Boswell.
Robinson, Biddle & Ward (W. S. Montgomery, of counsel), for The Elwell.
Moen & Kilbreth, for The Richmond.
Wing, Putnam & Burlingham and James Forrester, for The Powell.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

PER CURIAM. We do not think anything will be gained by rehearsing the contentions of the several parties or by discussing the testimony of the witnesses. In its ultimate analysis the cause presents questions of fact only. Although as to some of the propositions advanced there is a close concurrence between the statements of many of the witnesses, a more careful study of the movements of these eight vessels leads to the conclusion that such concurrence is not entitled to the weight which is sought to be attached to it.

At the base of the whole case there lie two questions: (1) Were or were not the movements of the tugs and tows such as to make the lane of water between them practically a cul-de-sac, dangerous for the schooner to navigate? (2) Did or did not the schooner, after coming in sight of the tows, make a change of course so as to enter into this lane, or did she hold her course, at a safe distance, from the tow she was overtaking, until the converging side of the lane caused by the sagging of the Boswell's barges made it necessary for her to change in order to avoid the latter? (3) And a third question, supplementary to the others, is whether or not the Elwell failed to discover the presence of the Powell until she was so close upon her that her own navigation was thereby seriously interfered with.

Taking the last question first, we are satisfied that the contention made in argument that the mate of the schooner did not discover the Powell till he was within 50 feet of her is a misinterpretation of the answers of the witness. We find nothing in his testimony to qualify his positive statement that he saw her as he was just passing astern of the Dempsey, which would be at the distance of nearly 1,000 feet away. We concur with the district judge that at that time the Elwell "was already pocketed by the tows," and that she was in a position of peril which she herself had not contributed to produce.

As to the second question. We place no reliance upon the statement of the witnesses, even from the schooner, that there was a considerable breadth of water near the place of collision. The circumstance that the Iowa, whose hawser to the Indiana (1020 feet long) did not part, was struck by the Powell about her fore-rigging, shows conclusively that the distance between the Elwell and Powell must have been less than that. We do not credit the estimate of the master of the Iowa that he sheered out of his course 800 feet. His collision with the Powell took place, as the master of the Indiana says, over the latter's quarter. We are satisfied that the estimate of the master of the Powell that the distance between himself and the Indiana when he passed her was 300 or 400 feet is more nearly accurate, and that he passed the Richmond still closer. Indeed, we are inclined strongly to the belief that the Richmond did stop or slow to aid the Powell in making clearance—a point sharply in dispute between the mate of the schooner and the master of the Richmond. But it is not necessary to decide this last point. The lane of water between the tows narrowed from nearly half a mile to a width so small as to make it a perilous task to take the schooner through. Once in the lane, she was practically "pocketed by the tows" as the district judge finds. And we concur in the conclusion that the Boswell was in fault for not sooner taking

:action to haul her sagging tows to the westward when she first saw the schooner.

As to the first question. Despite the array of witnesses from the :tows, we are satisfied that the schooner did not make the extraordinary and unaccountable change of course attributed to her across the :bow of the Boswell, but that she maintained her course until the converging side of the cul-de-sac forced her to change it in order to .avoid the sagging barges.

Whatever errors of navigation were committed when the bottom of the pocket was reached and the four colliding vessels were in close proximity were in extremis as the district judge finds, and, the extremity not having been produced by either of the four, they should not be held. On the whole case we concur with the district judge.

The decree is affirmed, with interest and a single bill of costs against the Boswell.

TOWNSEND, Circuit Judge, heard argument, participated in consultation, and voted to affirm, but did not see the opinion.